**Michael K. Heilbronner, OSB No. 010050**
MHeilbronner@IdeaLegal.com
IdeaLegal, P.C.
121 SW Morrison; Suite 1020
Portland, OR  97204
Telephone:  (503) 449-9084
Facsimile:  (503) 914-0301



Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**PENDLETON WOOLEN MILLS, INC.,**

       Plaintiff,

  v.

**K MART CORPORATION,**

       Defendant.

CV '05   1658   HA

NO. _____

**COMPLAINT**
Trademark Infringement, Trademark
Dilution, Unfair Competition, and Deceptive
Trade Practices

**DEMAND FOR JURY TRIAL**

Plaintiff Pendleton Woolen Mills, Inc. ("Pendleton" or "Plaintiff") states the following

for its complaint against K Mart Corporation ("K mart" or "Defendant"):

1.    This is an action at law and in equity for trademark infringement and dilution,

injury to business reputation, unfair competition, and deceptive trade practices arising under the

COMPLAINT                                                                                      PAGE 1

Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (2002) ("Lanham Act"); the antidilution laws

of the several states, including the Oregon antidilution statute, O.R.S. § 647.107; the fair

business practices and unfair and deceptive trade practices acts of the several states, including the

Oregon Unlawful Trade Practices Act, O.R.S. §§ 646.605 to 646.656; and the common law.

     2.     Defendant is offering for sale and selling flannel sheets that bear identical and

confusingly similar imitations of Pendleton's federally registered PENDLETON, PENDLETON

HOME, and PENDLETON HOME COLLECTION trademarks and service marks (collectively

"PENDLETON Marks") and common-law Tepee Logo trademark.  Pendleton does not

manufacture Defendant's flannel sheets, nor is Defendant connected or affiliated with, or

authorized by, Pendleton in any way.  Defendant's merchandise is likely to cause confusion and

to deceive consumers and the public regarding its source, and Defendant's merchandise dilutes

and tarnishes the distinctive quality of Pendleton's PENDLETON Marks and Tepee Logo

trademark.

## JURISDICTION AND VENUE

     3.     This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15

U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over

Pendleton's related state and common-law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

     4.     This Court has personal jurisdiction over Defendant because, on information and

belief, Defendant has distributed or sold infringing merchandise within this State, has engaged in

acts or omissions within this State causing injury, has engaged in acts or omissions outside of

this State causing injury within this State, has manufactured or distributed products used or

consumed within this State in the ordinary course of trade, or has otherwise made or established

contacts with this State sufficient to permit the exercise of personal jurisdiction.

COMPLAINT                                                                 PAGE 2

5.      This District is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Pendleton's claims occurred in this District.

## THE PARTIES

6.      Plaintiff Pendleton Woolen Mills, Inc. is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 220 NW Broadway, Portland, Oregon 97208.

7.      On information and belief, Defendant K Mart Corporation is a Michigan corporation with a principal place of business at 3100 W. Big Beaver Rd., Troy, Michigan 48084.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**The PENDLETON Trademark**

8.      Pendleton is currently, and for more than 100 years has been, one of the world's leading manufacturers of men's and women's apparel, blankets, home décor, bedding, and related accessories.  At least as early as 1903, Pendleton first used the PENDLETON trademark in connection with the manufacture, distribution, and sale of such products in the United States.

9.      Since that time, the PENDLETON Marks have come to signify the quality and reputation of Pendleton's wide ranging products and services.

10.     Pendleton is the owner of federal trademark registration, Reg. No. 514,710, issued by the United States Patent and Trademark Office on September 6, 1949 for the PENDLETON trademark  for "piece goods and blankets of wool, cotton, silk, rayon, nylon, and other natural and synthetic fibres."  Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable and active.

11.     Pendleton is the owner of federal trademark registration, Reg. No. 2,713,136 issued by the United States Patent and Trademark Office on May 6, 2003 for the PENDLETON HOME service mark for "mail order catalog services featuring a wide variety of household and

consumer goods, namely, apparel, blankets, furniture, pillows, rugs, fabric, tote bags, duffel bags, jewelry, pet products, figurines, bedding, housewares, mugs, serving dishes, bowls, note cards, books, wood carriers, coasters, picture frames, candles, blanket carriers, and storage containers." This registration is valid and active.

12.    Pendleton is the owner of federal trademark registration, Reg. No. 1,980,970 issued by the United States Patent and Trademark Office on June 18, 1996 for the PENDLETON trademark for "men's wear and women's wear, namely coats, jackets, shirts, blouses, sweaters, skirts, dresses, shorts, pants, slacks, trousers, robes, vests, caps, hats, ties; clothing accessories, namely mufflers and slippers." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable and active.

13.    Pendleton is the owner of federal trademark registration, Reg. No. 913,742 issued by the United States Patent and Trademark Office on June 8, 1971 for the PENDLETON (& Design) trademark for "Boys' outer shirts and jackets, men's outer shirts and knit shirts, robes, vests, jackets, sweaters and slacks." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable and active.

14.    Pendleton is the owner of federal trademark registration, Reg. No. 2,717,244 issued by the United States Patent and Trademark Office on May 20, 2003 for the PENDLETON HOME COLLECTION trademark for "rugs." This registration is valid and active.

15.    Pendleton is the owner of federal trademark registration, Reg. No. 2,951,453 issued by the United States Patent and Trademark Office on May 17, 2005 for the PENDLETON trademark for "Jewelry and watches." This registration is valid and active.

16.    Pendleton is the owner of federal trademark application Serial No. 78/452,195, filed with the United States Patent and Trademark Office on July 16, 2004, for the PENDLETON trademark and service mark for:

> Tote bags, overnight bags, backpacks, duffel bags, satchels,
> saddle bags, cosmetic cases sold empty, toiletry cases sold

COMPLAINT                                                                                          PAGE 4

empty, shaving bags sold empty, leather blanket carriers, canvas wood carriers, leather key chains, and dog apparel.

Blankets, namely, bed blankets, children's blankets, blankets for outdoor use and woolen blankets; blanket throws, linens, towels, pillows, curtains, woolen fabric, textile wall hangings, cloth coasters, table runners, oven mitts, and fireplace mitts.

Retail store services, mail order catalog service, and online retail store services featuring a wide variety of household and consumer goods, such as clothing, footwear, headgear, and accessories therefor, jewelry, blankets, bedding, linens, pillows, fabric, furniture, rugs, home furnishings and accessories for bath, kitchen, office, and household, housewares and kitchen utensils, luggage, bags, and accessories therefor, travel items, books, paper goods, printed matter, artwork, toys, household and holiday decorations, collectibles, compact discs and disc cases, computer accessories, and pet products.

Pendleton uses and has used the PENDLETON trademark in connection with these goods and

services for years.

17.    For decades, Pendleton has extensively and continuously used, advertised, and

promoted the PENDLETON trademark (and, more recently, the PENDLETON Marks ) in

connection with its products and services.  In recent years, annual sales of products and services

offered and sold in connection with the PENDLETON Marks have totaled hundreds of millions

of dollars within the United States.

18.    Pendleton and the PENDLETON Marks have also been the subject of extensive

and prominent recognition by the media, as well as collectors of and experts on Pendleton's

merchandise.  As a result of Pendleton's sales, advertising, and promotion of products and

services in connection with the PENDLETON Marks and substantial third-party recognition of

the PENDLETON Marks, the PENDLETON Marks and Pendleton's products and services have achieved widespread fame and tremendous public recognition.

19.    As a result of Pendleton's continuous and exclusive use of the PENDLETON Marks in connection with its products and services, the marks enjoy wide public acceptance and association with Pendleton and have come to be recognized widely and favorably by the public as an indicator of the origin of Pendleton's goods and services.

20.    As a result of Pendleton's extensive use and promotion of the PENDLETON Marks, Pendleton has built up and now owns valuable goodwill that is symbolized by the marks. The purchasing public has come to associate the PENDLETON Marks with Pendleton.

**The Indian Trade Blanket**

21.    For hundreds of years, blankets have played and continue to play a significant role in the everyday lives of Native Americans, serving needs as mundane and significant as comfort and warmth (as both clothing and bedding); fashion as clothing; ritual ceremonies (as dance shawls and burial blankets); and ceremonies for and celebrations of milestone events such as birth and marriage (as both gifts and regalia).

22.    Through most of the early 19th Century, Native American blankets primarily were made of a variety of materials, depending on the region and tribe, including animal furs and hides, woven bark, woven grasses, feathers, and limited amounts of wild cotton and European wool.

23.    Beginning in the mid-19th Century, advances in loom technology and growth of the wool trade led to the manufacture of wool blankets bearing intricate geometric patterns and a wide variety of bright colors. Such blankets soon became ubiquitous staple items at trading posts serving Indian reservations throughout the United States, and Native Americans gravitated to the

wool blankets as suitable, all-purpose replacements for the older types of blankets. Such wool blankets soon became known as "Indian Trade Blankets."

24.    Through the end of the 19th Century and through the beginning of the 20th Century, Indian Trade Blankets became extremely popular among both Native Americans and non-Native Americans throughout the United States. Native Americans purchased Indian Trade blankets for traditional and typical uses, but Indian Trade Blankets also became widely popular among the broader population of the United States for recreational, decorative, and practical uses. Among many other common uses, Indian Trade Blankets were one of the preferred ways early automobile owners kept warm in their cars, before the arrival of heaters in automobiles.

**Pendleton's Indian Trade Blankets and the Tepee Logo Trademark**

25.    Although several manufacturers supplied the Indian Trade Blanket market in the early 20th Century, Pendleton was the leading manufacturer and, today, is the leading manufacturer of traditional wool Indian Trade Blankets. One prominent collector and author states succinctly, "Pendleton is undoubtedly the most recognized name in American Indian trade blankets." Language of the Robe: American Indian Trade Blankets at 121, Robert W. Kapoun (Gibbs Smith 1992).

26.    Beginning approximately in 1910 and continuing into the 1930s, Pendleton designed and sold an Indian Trade Blanket bearing what is known as the Tepee design. The Tepee design consists of rows of geometric patterns and a conspicuous row of a repeating, distinctive Tepee separated by patterns of small diamonds. A color copy of a photograph of Pendleton's Tepee design Indian Trade Blanket is attached as **Exhibit 1.**

27.    Collector and author Robert W. Kapoun states that Pendleton's Tepee design "was one of the most popular blankets produced by the Pendleton Woolen Mills." Language of the Robe: American Indian Trade Blankets at 161, Robert W. Kapoun (Gibbs Smith 1992).

COMPLAINT                                                                                    PAGE 7

28.     Beginning in 2001, to capitalize on the goodwill engendered by classic Indian Blanket designs like the Tepee design, Pendleton introduced its Heritage Collection. As part of the Heritage Collection, Pendleton reintroduced the Tepee design Indian Blanket in 2003.

29.     Since 2003, Pendleton has extensively and continuously used, advertised, and promoted the Tepee Logo trademark in connection with the Tepee design Indian Blanket.

30.     With the reintroduction of the Tepee design Indian Blanket, Pendleton has affirmed and further developed the brand identifying significance of the Tepee Logo by attaching a hangtag that displays and calls out the Tepee Logo to each Indian Blanket. A color copy of a photograph of the hangtag is attached as **Exhibit 6.**

31.     The Tepee design Indian Blanket has retained and continued the longstanding reputation of the Tepee design.

32.     As a result of Pendleton's use of the Tepee Logo and strong sales of products bearing the Tepee Logo, the Tepee Logo distinctly and strongly identifies Pendleton as the source of goods bearing the Tepee Logo trademark.

33.     The strength of and goodwill embodied by the Tepee Logo trademark have enabled Pendleton to leverage this important brand symbol through use in connection with other home décor products and accessories, including bedding and pillows.

34.     As a result of Pendleton's continuous and exclusive use of the Tepee Logo trademark in connection with its products, the mark enjoys wide public acceptance and association with Pendleton. The Tepee Logo trademark is distinctive, and it has come to be recognized widely and favorably by the public as an indicator of the origin of Pendleton's goods.

35.     As a result of Pendleton's extensive use and promotion of its Tepee Logo trademark, Pendleton has built up and now owns valuable goodwill that is symbolized by the mark. The purchasing public has come to associate the Tepee Logo trademark with Pendleton.

## DEFENDANT'S UNLAWFUL ACTIVITIES

36.     Defendant markets, sells, and offers for sale flannel sheets in interstate commerce that bear the PENDLETON trademark and a virtually indistinguishable version of Pendleton's Tepee Logo trademark (the "Infringing Goods").

37.     The packaging for the Infringing Goods consists of two elements, namely, (i) a clear, flexible plastic, rectangular container that zips closed to hold the Infringing Goods; and (ii) a cardboard insert that partially wraps around the Infringing Goods.  A color copy of a photograph of the Infringing Goods in the packaging is attached as **Exhibit 2**.  Color copies of a photograph and a close-up photograph of the front panel of the cardboard insert for the Infringing Goods are attached collectively as **Exhibit 3**.

38.     Defendant uses the PENDLETON trademark as the first word in the name of the Infringing Goods, and the PENDLETON trademark appears clearly and conspicuously on the packaging for the Infringing Goods.  See **Exhibit 3**.

39.     The Infringing Goods bear an overall design motif that is strikingly similar to the most distinct portion of Pendleton's Tepee blanket design, namely the portion of the Tepee blanket design that prominently employs the Tepee Logo trademark.  A color copy of a close-up photograph depicting the Tepee Logo trademark on the Infringing Goods is attached as **Exhibit 4**.

40.     The top of the Infringing Goods (i.e., the portion of the sheets that would be at the head of a bed and not covered by a blanket) depicts three rows of the Tepee Logo trademark.  One of the three rows is part of the folded-over, top edge of the sheet.  This use of multiple rows of the Tepee Logo trademark at the top of the sheets contrasts with the pattern on the remainder of the sheets (i.e., the portion of the sheets that would be covered by a blanket), which has only single rows of the Tepee Logo.  A color copy of a close-up photograph showing the multiple rows of the Tepee Logo on the top portion of the Infringing Goods (one row of which is folded over the edge of the top portion) is attached as **Exhibit 5**.

COMPLAINT                                                                                           PAGE 9

41.     On information and belief, Defendant designed the top portion of the Infringing Goods in a manner that is most likely to make apparent and display the Tepee Logo trademark to consumers.

42.     The photograph of the Infringing Goods on the cardboard insert of the packaging prominently displays several rows of the Tepee Logo trademark on the Infringing Goods.  See **Exhibit 3**.

43.     On information and belief, the photograph of the Infringing Goods on the cardboard insert of the packaging does not accurately display the Infringing Goods themselves. To wit, and on information and belief, the photograph of the Infringing Goods on the cardboard insert of the packaging makes it appear that the top portion of the Infringing Goods is folded in a manner that reveals two full rows of the Tepee Logo trademark.

44.     In contrast, and on information and belief, when the top portion of the actual Infringing Goods is folded over in such a manner the underside of the Infringing Goods (i.e., the other side of the sheet) is white.  On information and belief, that white portion would be visible when the actual Infringing Goods are folded in the manner apparently depicted on the photograph of the Infringing Goods on the cardboard insert.

45.     On information and belief, Defendant purposely selected a photograph of the Infringing Goods for the cardboard insert that prominently displays multiple rows of the Tepee Logo but that does not accurately reflect the appearance and quality of the actual Infringing Goods inside the packaging.

46.     On information and belief, Defendant folds and places the Infringing Goods into the packaging in a manner that conspicuously displays Defendant's confusingly similar imitation of the Tepee Logo to consumers.  See top-right portion of package depicted in **Exhibit 2.**

47.     On information and belief, Defendant purposely folds and places the Infringing Goods into the packaging in a manner that displays the Tepee Logo trademark prominently and conspicuously to consumers.

COMPLAINT                                                                                     PAGE 10

48.    On information and belief, the Infringing Goods are offered for sale and sold in Defendant's retail stores throughout the United States, including at least, stores located in Beaverton and Gresham, Oregon; Lewiston, Idaho; and Albuquerque, New Mexico.

49.    On information and belief, Defendant offers for sale and sells the Infringing Goods throughout the United States via Defendant's website (www.kmart.com).  The Infringing Goods are readily accessible on Defendant's website by entering the PENDLETON trademark in the search field on the upper left-hand corner of the home page of Defendant's website.

50.    On information and belief, the Infringing Goods are of a materially lower quality than both Pendleton's merchandise and what consumers would expect of Pendleton merchandise.

51.    The Infringing Goods marketed, sold, and offered for sale by Defendant are not manufactured by Pendleton, nor is Defendant associated or connected with Pendleton, or licensed, authorized, sponsored, endorsed, or approved by Pendleton in any way.

52.    Pendleton used the PENDLETON Marks and the Tepee Logo trademark extensively and continuously before Defendant began offering the Infringing Goods for sale and using confusingly similar imitations of the PENDLETON trademark and the Tepee Logo trademark.

53.    The Infringing Goods sold by Defendant are similar to and compete with goods sold by Pendleton, and these goods are sold through overlapping channels of trade, including the Internet.

54.    Defendant's use of confusingly similar imitations of Pendleton's PENDLETON Marks and Tepee Logo trademark is likely to deceive, confuse, and mislead consumers, Pendleton's retail customers, and others into believing that the Infringing Goods sold by Defendant are manufactured by, authorized by, or in some manner associated with Pendleton when, in fact, they are not.

55.    The likelihood of confusion, mistake, and deception engendered by Defendant's misappropriation of Pendleton's trademarks is causing irreparable harm to the goodwill

COMPLAINT                                                                                   PAGE 11

symbolized by the PENDLETON Marks and the Tepee Logo trademark and the reputation that they embody.

56.     Defendant's activities are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers, and others viewing Defendant's Infringing Goods at the point of sale or in the post-sale environment are likely -- due to Defendant's use of confusingly similar imitations of the PENDLETON Marks and the Tepee Logo trademark -- to mistakenly attribute the product to Pendleton.  This is particularly damaging with respect to those persons who perceive a defect or lack of quality in Defendant's products. By causing such a likelihood of confusion, mistake, and deception, Defendant is inflicting irreparable harm to the goodwill symbolized by the PENDLETON Marks and the Tepee Logo trademark and the reputation and quality that they embody.

57.     Upon information and belief, Defendant continues to use confusingly similar imitations of Pendleton's PENDLETON Marks and Tepee Logo trademark in connection with the sale of products that are competitive to those offered by Pendleton.  Defendant began selling products with these imitations after Pendleton established protectable rights in its PENDLETON Marks and Tepee Logo trademark and after the PENDLETON Marks had become famous.

58.     On information and belief, Defendant's activities have caused actual confusion in the marketplace.

59.     On information and belief, Defendant knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar imitations of Pendleton's PENDLETON Marks and Tepee Logo trademark.

### FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

60.     Pendleton repeats and incorporates by reference the allegations in paragraphs 1-59.

61.     Defendant's use of confusingly similar imitations of Pendleton's registered PENDLETON Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Pendleton, or are associated or connected with Pendleton, or have the sponsorship, endorsement, or approval of Pendleton.

62.     Defendant has used a mark confusingly similar to Pendleton's federally registered PENDLETON Marks in violation of 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Pendleton's goodwill and reputation as symbolized by the federally registered PENDLETON Marks, for which Pendleton has no adequate remedy at law.

63.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Pendleton's federally registered PENDLETON Marks, to Pendleton's great and irreparable injury.

64.     Defendant has caused and is likely to continue causing substantial injury to the public and to Pendleton, and Pendleton is entitled to injunctive relief and to recover Defendant's profits, statutory damages, treble damages, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

### SECOND CLAIM FOR RELIEF
**(Federal Unfair Competition)**

65.     Pendleton repeats and incorporates by reference the allegations in paragraphs 1-64.

66.     Defendant's use of knock-off duplicates and confusingly similar imitations of Pendleton's PENDLETON Marks and Tepee Logo trademark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that

COMPLAINT                                                          PAGE 13

Defendant's goods are manufactured or distributed by Pendleton, or are affiliated, connected, or associated with Pendleton, or have the sponsorship, endorsement, or approval of Pendleton.

67.    Defendant has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Pendleton's goodwill and reputation as symbolized by the PENDLETON Marks and the Tepee Logo trademark, for which Pendleton has no adequate remedy at law.

68.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Pendleton's PENDLETON Marks and the Tepee Logo trademark to the great and irreparable injury of Pendleton.

69.    Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Pendleton, and Pendleton is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

### THIRD CLAIM FOR RELIEF
**(Federal Trademark Dilution)**

70.    Pendleton repeats and incorporates by reference the allegations in paragraphs 1-69.

71.    Pendleton has extensively and continuously promoted and used the registered PENDLETON Marks in the United States, and the marks have thereby become a famous and well-known symbol of Pendleton's goods and services.

72.    Defendant is making commercial use in commerce of a mark that dilutes, tarnishes, and is likely to dilute and tarnish Pendleton's PENDLETON Marks by eroding the public's exclusive identification of these famous marks with Pendleton, tarnishing and degrading

the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish Pendleton's goods and services.

73.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the PENDLETON Marks or to cause dilution and tarnishment of the PENDLETON Marks, to the great and irreparable injury of Pendleton.

74.    Defendant has caused and will continue to cause irreparable injury to Pendleton's goodwill and business reputation, and dilution of the distinctiveness and value of Pendleton's famous and distinctive PENDLETON Marks in violation of 15 U.S.C. § 1125(c), and Pendleton therefore is entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116 and 1117.

## FOURTH CLAIM FOR RELIEF
### (State Trademark Dilution and Injury to Business Reputation)

75.    Pendleton repeats and incorporates by reference the allegations contained in paragraphs 1-74.

76.    Pendleton has extensively and continuously promoted and used the PENDLETON Marks and the Tepee Logo trademark in the United States, and the marks have thereby become highly distinctive and well-known symbols of Pendleton's goods and services.

77.    Defendant's unauthorized use of the PENDLETON trademark and Tepee Logo trademark dilutes and is likely to dilute the distinctiveness of Pendleton's PENDLETON Marks and Tepee Logo trademark by eroding the public's exclusive identification of these highly distinctive and well-known marks with Pendleton, tarnishing and degrading the positive associations and prestigious connotations of these marks, and otherwise lessening the capacity of the marks to identify and distinguish Pendleton's goods and services.

78.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Pendleton's PENDLETON Marks and Tepee Logo

trademark or to cause dilution and tarnishment of these marks, to the great and irreparable injury of Pendleton.

79.    Defendant is causing and will continue to cause irreparable injury to Pendleton's goodwill and business reputation and to dilute the distinctiveness and value of Pendleton's famous and distinctive PENDLETON Marks and Tepee Logo trademark in violation of the Oregon antidilution act, O.R.S. § 647.107 (2003), as well as the antidilution laws of the several states, including Alabama, ALA. CODE § 8-12-17 (2003); Alaska, ALASKA STAT. §45.50.180 (Michie 2002); Arizona, ARIZ. REV. STAT. ANN. §44-1448.01 (West 2003); Arkansas, ARK. CODE ANN. § 4-71-213 (2002); California, CAL. BUS. & PROF. CODE § 14330 (West 2003); Connecticut, CONN. GEN. STAT. ANN § 35-11i(c) (West 2003); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2002); Florida, FLA. STAT. ANN. § 495.151 (West 2003); Georgia, GA. CODE ANN. § 10-1-451 (2003); Hawaii, HAW. REV. STAT. ANN. §482-32 (Michie 2003); Idaho, IDAHO CODE § 48-513 (Michie 2002); Illinois, 765 ILL. COMP. STAT. ANN. 1036/65 (2003); Iowa, IOWA CODE ANN. § 548.113 (West 2003); Kansas, KAN. STAT. ANN. § 81-214 (2002); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (West 2003); Maine, ME. REV. STAT. ANN. tit. 10, § 1530 (West 2003); Massachusetts, MASS. GEN. LAWS. ANN. ch. 110B, § 12 (West 2003); Minnesota, MINN. STAT. ANN. § 333.285 (West 2003); Mississippi, MISS. CODE. ANN. § 75-25-25 (2003); Missouri, MO. ANN. STAT. § 417.061(1) (West 2002); Montana, MONT. CODE ANN. § 30-13-334 (2003); Nebraska, NEB. REV. STAT. ANN. §87-140 (Michie 2002); New Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (2003); New Jersey, N.J. STAT. ANN. 56:3- 13.20 (West 2003); New Mexico, N.M. STAT. ANN. § 57-3B-15 (Michie 2002); New York, N.Y. GEN. BUS. Law § 360-l (2003); Pennsylvania, 54 PA. CONS. STAT. ANN. § 1124 (West 1996); Rhode Island, R.I. GEN. LAWS § 6-2-12 (1992); South Carolina, S. C. CODE ANN. § 39-15-1165 (2002); Tennessee, TENN. CODE ANN. § 47-25-513 (2003); Texas, TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2003); Utah, UT. CODE ANN. §70-3a-403 (2002); Washington, WASH. REV. CODE ANN. § 19.77.160 (2003); West

Virginia, W. VA. CODE ANN. 47-2-13 (Michie 2003); and Wyoming, WYO. STAT. ANN. §

40-1-115 (Michie 2002). Pendleton therefore is entitled to injunctive relief, damages and costs,

as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF
#### (Unfair and Deceptive Trade Practices)

80.    Pendleton repeats and incorporates by reference the allegations in paragraphs 1-

79.

81.    Defendant has been and is passing off its goods as those of Pendleton, causing a

likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of

Defendant's goods, causing a likelihood of confusion as to Defendant's affiliation, connection, or

association with Pendleton, and otherwise damaging the public. Defendant's conduct constitutes

unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation

of Oregon's Unlawful Trade Practices Act, O.R.S. §§ 646.605 to 646.656 (2003), and the unfair

and deceptive trade practices statutes of other states, including Colorado, COLO. REV. STAT.

ANN. §§ 6-1-101 to 6-1-115 (West 1996 and Supp. 1998); Delaware, DEL. CODE ANN. tit. 6,

§§ 2531 to 2536 (1993 & Supp. 1998); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375

(1994); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (1993); Illinois, 815 ILL. COMP.

STAT. ANN. 510/1 to 510/7 (1993); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216

(West 1996); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 1995); Nebraska, NEB.

REV. STAT. §§ 87-301 to 87-306 (1995); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-

12-22 (Michie 1995); New York, N.Y. GEN. BUS. Law § 349 (McKinney 1988); Ohio, OHIO

REV. CODE ANN. §§ 4165.01 to 4165.04 (West 1995); and Oklahoma, OKLA. STAT. ANN.

tit. 78, §§ 51 to 55 (West 1995 & Supp. 1998).

82.    Defendant's unauthorized use of confusingly similar imitations of Pendleton's

PENDLETON Marks and Tepee Logo trademark has caused and is likely to cause substantial

injury to the public and to Pendleton, and Pendleton is entitled to injunctive relief and to recover

COMPLAINT                                                                        PAGE 17

damages, punitive damages, costs, and reasonable attorneys' fees as appropriate under the law of these states.

## SIXTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

83.     Pendleton repeats and incorporates by reference the allegations in paragraphs 1-82.

84.     Defendant's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of Pendleton unless restrained by this Court, and Pendleton has no adequate remedy at law for this injury.

85.     On information and belief, Defendant acted with full knowledge of Pendleton's use of, and statutory and common law rights to, the PENDLETON Marks and common law rights to the Tepee Logo trademark, and without regard to the likelihood of confusion of the public created by Defendant's activities.

86.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Pendleton's PENDLETON Marks and Tepee Logo trademark to the great and irreparable injury of Pendleton.

87.     As a result of Defendant's acts, Pendleton has been damaged in an amount not as yet determined or ascertainable.  At a minimum, however, Pendleton is entitled to injunctive relief, an accounting of Defendant's profits, damages, and costs.  Further, in light of the deliberately fraudulent and malicious use of confusingly similar imitations of Pendleton's PENDLETON Marks and Tepee Logo trademark, and the need to deter Defendant from similar conduct in the future, Pendleton additionally is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1.    Defendant and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined permanently, from:

      a.    using the PENDLETON Marks or any other copy, reproduction, or colorable imitation, or simulation of Pendleton's PENDLETON Marks on or in connection with Defendant's goods or services;

      b.    using the Tepee Logo trademark or any other copy, reproduction, or colorable imitation, or simulation of Pendleton's Tepee Logo trademark on or in connection with Defendant's goods or services;

      c.    using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the trademarks, service marks, names, or logos of Pendleton;

      d.    using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Pendleton, or are sponsored or authorized by Pendleton, or are in any way connected or related to Pendleton;

      e.    using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that dilutes, tarnishes, or is likely to dilute or tarnish, the distinctiveness of the trademarks, service marks, names, or logos of Pendleton; and

      f.      passing off, palming off, or assisting in passing off or palming off, Defendant's goods or services as those of Pendleton, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2.      Defendant be ordered to recall all products and packaging bearing the PENDLETON Marks, the Tepee Logo trademark, or any other mark or designation that is confusingly similar to them, which have been shipped by Defendant or under Defendant's authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such person, business, retail outlet, or entity a copy of this Court's order as it relates to said injunctive relief against Defendant;

3.      Defendant be ordered to deliver up for impoundment and for destruction all bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery, catalogs, or other materials in the possession, custody, or under the control of Defendant that are found to adopt, infringe, or dilute any of Pendleton's trademarks or that otherwise unfairly compete with Pendleton and its products and services;

4.      Defendant be ordered to cease all use of any kind of the PENDLETON Marks and Tepee Logo trademark (and confusingly similar imitations of them) on the Internet;

5.      Defendant be compelled to account to Pendleton for any and all profits derived by Defendant from the sale or distribution of the Infringing Goods described in this Complaint;

6.      Pendleton be awarded all available damages caused by the acts forming the basis of this Complaint;

7.      Based on Defendant's knowing and intentional use of confusingly similar imitations of Pendleton's PENDLETON Marks and Tepee Logo trademark, the monetary award

(including statutory damages and/or Defendant's profits) be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117;

      8.     Defendant be required to pay to Pendleton the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, and the state statutes cited in this Complaint;

      9.     Based on Defendant's willful and deliberate infringement and dilution of Pendleton's marks, and to deter such conduct in the future, Pendleton be awarded punitive damages; and

      10.    Pendleton have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

DATED: November 2, 2005

**IdeaLegal, P.C.**

By: _____
    Michael Heilbronner
    OSB No. 010050
    Telephone: (503) 449-9084
    Fax: (503) 914-0301
    MHeilbronner@IdeaLegal.com

    Attorney for Plaintiff